In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3734

FELIX D. GUZMAN-RIVADENEIRA,

*Petitioner*,

*v.*

LORETTA E. LYNCH,
Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A044 666 731

ARGUED APRIL 26, 2016 — DECIDED MAY 13, 2016

Before KANNE, SYKES, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Petitioner Felix Guzman-Rivadeneira, a citizen of Ecuador, seeks review of a Board of Immigration Appeals decision upholding an order of removal. He asks us to address an underlying question of law, whether his 1993 conviction in California for possessing counterfeit prescription blanks was properly deemed a "crime involving

moral turpitude" for purposes of immigration law. We conclude, however, that too many layers of procedural defaults prevent us from reaching that question of law.

First, Guzman-Rivadeneira's original lawyer conceded before the immigration judge that the 1993 conviction was for a crime involving moral turpitude. The immigration judge was entitled to accept that concession and to focus her attention on Guzman-Rivadeneira's other arguments. Second, in appealing to the Board of Immigration Appeals, Guzman-Rivadeneira's new lawyer did not ask the Board for the relief he seeks in court: to relieve him of the first lawyer's concession. Also, although the new lawyer criticized the first lawyer's performance, she did not take the procedural steps needed to obtain relief based on a claim of ineffective assistance of counsel.

In support of this petition for judicial review, Guzman-Rivadeneira's third set of lawyers have made a valiant effort to argue that he should be relieved of his original lawyer's concession. We conclude, however, that the Board did not legally err or abuse its discretion by deciding the case as it was presented to it. We therefore deny the petition for review.

I.  *Factual and Procedural Background*

After Guzman-Rivadeneira came to the United States from Ecuador, three events occurred that affect whether he may remain here. First, in 1993 he was convicted in California of possession of counterfeit prescription blanks. See Cal. Health & Safety Code § 11162.5(a) (West 1993). Second, after he had returned to Ecuador, he then returned to the United States in 1995. He applied for and received the status of lawful permanent resident because his mother is a U.S. citizen. On

his application, he was asked whether he had ever been arrested or convicted of a crime. He falsely answered "no." Finally, in 2012, Guzman-Rivadeneira pled guilty in California to the misdemeanor of obtaining a controlled substance by fraud. See Cal. Health & Safety Code § 11173(a) (West 2012).

Guzman-Rivadeneira came to the attention of immigration authorities in 2014 when he returned to the United States from another trip abroad. The Department of Homeland Security charged that he was removable on four grounds: conviction of a crime involving moral turpitude for the 1993 counterfeit prescription blanks conviction, 8 U.S.C. § 1182(a)(2)(A)(i)(I); conviction of a controlled substance offense for the 2012 conviction, *id.* § 1182(a)(2)(A)(i)(II); procurement of a visa by fraud, *id.* § 1182(a)(6)(C)(i); and lack of a valid entry document when he was reentering the United States, *id.* § 1182(a)(7)(A)(i)(I).

At his removal hearing, Guzman-Rivadeneira's lawyer conceded all four grounds of removability. The lawyer offered other arguments for avoiding the consequences, including that a 1997 California state court order reducing the 1993 conviction to a misdemeanor should be given retroactive effect for immigration purposes. He also argued that Guzman-Rivadeneira was eligible for a discretionary waiver of removability for his visa-application fraud available to those who, among other things, were "otherwise admissible." See 8 U.S.C. § 1227(a)(1)(H)(i). The lawyer further argued that, with that waiver, Guzman-Rivadeneira would remain a legal permanent resident and thus would be eligible for cancellation of other grounds of removal. See *id.* § 1229b(a).

The immigration judge denied relief. Citing the lawyer's concessions, the judge first found Guzman-Rivadeneira removable on all four grounds. The judge then explained that Guzman-Rivadeneira was not eligible for a waiver. His 1993 conviction for a crime that, as his lawyer conceded, involved moral turpitude meant that he was not "otherwise admissible" when he reentered in 1995. Without a waiver, the judge concluded, Guzman-Rivadeneira was not and never had been a lawful permanent resident and was therefore ineligible for cancellation of removal under 8 U.S.C. § 1229b(a).

With a new lawyer, Guzman-Rivadeneira appealed to the Board of Immigration Appeals. He argued that the immigration judge made a legal error by finding that his 1993 conviction was a crime involving moral turpitude and that he was ineligible for the waiver of his fraud and cancellation of removal. His new lawyer barely mentioned the first lawyer's concession that the 1993 conviction was for a crime involving moral turpitude and did not directly seek relief from that concession. Guzman-Rivadeneira's brief to the Board did not even mention *Matter of Velasquez*, 19 I & N Dec. 377 (1986), the case he relies upon here to seek relief from his lawyer's concession, or its holding that the Board may relieve an alien from his lawyer's concessions in "egregious circumstances."

The new lawyer's brief to the Board criticized the first lawyer's performance as "inadequate" because he had failed to understand both how criminal convictions should be evaluated and the relationships among the different grounds for removal and related issues of potential waiver of those grounds. Guzman-Rivadeneira's brief to the Board made no

effort to comply with the procedural requirements established by the Board in *Matter of Lozada*, 19 I & N Dec. 637 (1988), for relief from ineffective assistance of counsel.

Instead, Guzman-Rivadeneira's appeal to the Board tried to approach the moral turpitude issue as if it were a pure question of law, disconnected from the procedural history in which the issue had been conceded. He argued that under the categorical approach that is used to decide the legal effects of prior criminal convictions for many purposes, the counterfeit prescription blank offense should not be deemed a crime involving moral turpitude because the crime did not require proof or admission of any element of intent to defraud or mislead. See *Matter of Serna*, 20 I & N. Dec. 579 (1992) (conviction for possession of altered immigration document without actual use or intent to use it unlawfully was not for crime involving moral turpitude); see generally *Matter of Silva-Trevino*, 26 I. & N. Dec. 550, 552–53 (Att'y Gen. 2015) (describing and applying categorical approach to crimes involving moral turpitude).

The Board did not reach the substance of this argument. Instead it relied on the general rule that aliens are bound by the representations of their lawyers. That rule has a narrow exception for "egregious circumstances" recognized in *Matter of Velasquez*, 19 I. & N. Dec. at 382–83. Although Guzman-Rivadeneira had not asked the Board to consider that exception, the Board mentioned it anyway. In making its decision, the Board recognized that Guzman-Rivadeneira had called his former lawyer's performance "inadequate," so the Board considered the case as it had been presented, in terms of ineffective assistance of counsel.

Framed in those terms, a threshold question was whether Guzman-Rivadeneira had satisfied the procedural requirements for claiming ineffective assistance of counsel under *Matter of Lozada*, 19 I. & N. Dec. at 639.

In *Lozada*, the Board responded to a high volume of claims of ineffective assistance by counsel by establishing new procedural requirements before such claims would be considered on their merits. An alien seeking relief from an administrative decision based on his lawyer's allegedly ineffective professional performance would be expected: (a) to provide an affidavit with the relevant facts, including the details of the representation agreement; (b) to show that the former lawyer had been informed of the allegations and had an opportunity to respond; and (c) in cases alleging a violation of ethical or legal responsibilities, to state whether an appropriate disciplinary complaint had been filed and if not, why not.

The Board pointed out that Guzman-Rivadeneira had not tried to comply with those procedural requirements. The Board then affirmed the immigration judge's rulings regarding removability and ineligibility for relief from removal.

II.  *Analysis on Judicial Review*

Aided now by a third set of lawyers, Guzman-Rivadeneira petitions for review and now invokes *Velasquez*, 19 I. & N. Dec. at 382–83, to argue (a) that he is eligible for the exception to the general rule that binds aliens to their lawyer's concessions, and (b) that he is entitled to such relief without having complied with the *Lozada* procedural requirements for claims for ineffective assistance of counsel.

A.  *Jurisdiction for Judicial Review*

We pause to explain our jurisdiction over this petition for review. Appellate courts generally lack jurisdiction to review removal orders against persons who "are removable by reason of having committed a criminal offense covered in section 1182(a)(2)," the statute at issue in this case, which provides that aliens who have been convicted of a crime involving moral turpitude are ineligible for admission to the United States.  See 8 U.S.C. § 1252(a)(2)(C);  *Moral-Salazar v. Holder*, 708 F.3d 957, 961–62 (7th Cir. 2013). This bar does not apply to issues of law,  see 8 U.S.C. § 1252(a)(2)(D);  *Moral-Salazar*, 708 F.3d at 962, and the underlying issue of law here is whether Guzman-Rivadeneira has been convicted of such a crime. The merits and our jurisdiction are intertwined, and we have jurisdiction to consider this petition for review.

B.  *Lawyers' Concessions and the Velasquez Exception*

In *Velasquez* the Board of Immigration Appeals held that an alien's lawyer's admissions in immigration proceedings are binding absent "egregious circumstances." The *Velasquez* exception may apply to a concession that (1) was "the result of unreasonable professional judgment," (2) was so unfair that it produced an unjust result, or (3) was untrue or incorrect. *Velasquez*, 19 I. & N. Dec. at 382–83; see also *Santiago-Rodriguez v. Holder*, 657 F.3d 820, 831–32 (9th Cir. 2011) (same); cf. *Hanna v. Holder*, 740 F.3d 379, 387–88 (6th Cir. 2014) ("as a threshold matter" the alien must argue "that the factual admissions or concessions of removability are untrue or incorrect," *and* that they came from unreasonable professional judgment or produced an unjust result).

Guzman-Rivadeneira argues that the exception for egregious circumstances should apply here. He asserts his original lawyer's concession that the prescription-blanks conviction in 1993 was a crime of moral turpitude was a product of unreasonable professional judgment, produced an unjust result by precluding all possibility of relief from removal, and was legally incorrect.

As our account of the procedural history shows, Guzman-Rivadeneira did not present this argument to the Board. He mentioned to the Board that former counsel's performance was "inadequate," but he did not cite *Velasquez* or argue that he should be relieved of counsel's concessions because of "egregious circumstances," much less outline what those egregious circumstances might have been. He tried instead to persuade the Board to treat the issue as a pure issue of law, regardless of the earlier procedural failures.

A petitioner's failure to exhaust an argument in administrative proceedings generally bars him from raising it before a court of appeals. See *Duarte-Salagosa v. Holder,* 775 F.3d 841, 846 (7th Cir. 2014) (petitioner must have asked Board to consider "same arguments" presented to court, not another argument based on the same evidence); *El-Gazawy v. Holder,* 690 F.3d 852, 858–59 (7th Cir. 2012) (argument must be presented to Board with enough specificity to allow Board to apply its specialized knowledge and provide reasoning for court to review).

In limited circumstances we have discretion to excuse a failure to exhaust, see *Duarte-Salagosa,* 775 F.3d at 846; *Arobelidze v. Holder,* 653 F.3d 513, 517 (7th Cir. 2011), but Guzman-Rivadeneira has not convinced us to exercise that discretion here. He argues that because the Board itself cited *Velasquez,*

even though he did not, we should consider the arguments that he now advances about it.

We disagree. First, it is clear that the *Velasquez* exception for egregious circumstances is a procedural doctrine that the Board has developed for exercise of the Board's own discretion. We see no abuse of discretion or legal error, particularly since Guzman-Rivadeneira is attacking the Board for not applying the *Velasquez* doctrine *sua sponte*. We have rejected "the idea that the judiciary can review the Board's decision not to act *sua sponte*." *Shah v. Holder*, 736 F.3d 1125, 1126 (7th Cir. 2013). The Board only cited the case; it did not analyze its three factors against the evidence in the record, let alone explain why that evidence did not meet the standard of egregious circumstances. To review the merits, we would have to speculate about the grounds on which the Board might have denied an argument about egregious circumstances if Guzman-Rivadeneira had made that argument.

In addition, Guzman-Rivadeneira has not even suggested that his second lawyer represented him incompetently before the Board. That lawyer's decision to refrain from invoking *Velasquez* may well have been strategic, albeit not successful. We see no reason to fault the Board for having decided the case as presented to it. The immigration judge relied explicitly on the original lawyer's concession, and the new lawyer on appeal did not ask for relief from that concession under *Velasquez*. We therefore decline to exempt Guzman-Rivadeneira from the administrative exhaustion requirement.

Guzman-Rivadeneira's argument raises one aspect of *Velasquez* that the Board may wish to clarify in the future. The *Velasquez* inquiry into arguably egregious circumstances is a close relative of the *Lozada* inquiry into a claim of ineffective

assistance of counsel. The Board may wish to consider more formally whether and when the *Lozada* procedural requirements also apply to arguments under *Velasquez.*

C. *Ineffective Assistance Theory*

Guzman-Rivadeneira raises one final argument. Apart from *Velasquez*, he argues that his case should be reopened because he received ineffective assistance of counsel before the immigration judge. As Guzman-Rivadeneira acknowledges, though, he failed to comply with *Lozada*'s procedural requirements for bringing such a claim. He urges us to follow the Ninth Circuit, which has held that the *Lozada* requirements need not be applied where ineffective assistance of counsel is "clear and obvious from the record." See, e.g., *United States v. Lopez-Chavez*, 757 F.3d 1033, 1044 (9th Cir. 2014), quoting *Hernandez-Mendoza v. Gonzales*, 537 F.3d 976, 978 (9th Cir. 2007), quoting in turn *Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1227 (9th Cir. 2002).

We have repeatedly declined invitations to follow that approach. See *Marinov v. Holder*, 687 F.3d 365, 368–70 (7th Cir. 2012); *Lin Xing Jiang v. Holder*, 639 F.3d 751, 755 (7th Cir.2011); *Ghaffar v. Mukasey*, 551 F.3d 651, 656 (7th Cir. 2008); *Stroe v. I.N.S.*, 256 F.3d 498, 501 (7th Cir. 2001). Satisfying *Lozada*'s procedural requirements, we have explained, is necessary to screen the many ineffective assistance claims that the Board sees, to discourage baseless allegations, to police the quality of the immigration bar, and to ensure that attorneys are able to defend attacks against their integrity and competence. *Patel v. Gonzales*, 496 F.3d 829, 831–32 (7th Cir.2007); *Stroe*, 256 F.3d at 504.

Accordingly, we DENY the petition for review.