NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 12, 2017
Decided February 14, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1360

| | |
|---|---|
| MARIO JIMENEZ-BECERRIL, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A206-550-492 |
| | |
| JEFFERSON B. SESSIONS III, | |
| Attorney General of the United States, | |
| *Respondent*. | |

## O R D E R

Mario Jimenez-Becerril, a 46-year-old Mexican citizen, petitions for review of the denial of his applications for asylum, withholding of removal under the Immigration and Nationality Act (INA), and withholding of removal under the Convention Against Torture (CAT). We dismiss in part and deny in part the petition for review.

### I. BACKGROUND

Jimenez-Becerril entered the United States without authorization in 2003. In 2016 he pleaded guilty to receiving stolen property worth more than $500, KY. REV. STAT. ANN. § 514.110(3)(a), and he was sentenced to 3 years' imprisonment. The Department of Homeland Security then began removal proceedings, charging Jimenez-Becerril as

removable on two grounds: (1) as an alien present in the United States without being admitted or paroled, *see* 8 U.S.C. § 1182(a)(6)(A)(i); and (2) as an alien convicted of a crime involving moral turpitude, *see id.* § 1182(a)(2)(A)(i)(I). Jimenez-Becerril, appearing pro se, conceded that he was removable on both grounds but applied—based on his fear of harm from Mexican drug cartels—for asylum, withholding of removal under the INA, and withholding of removal under the CAT.

At an evidentiary hearing before an Immigration Judge, Jimenez-Becerril elaborated on his circumstances. He testified that he had served in the Mexican army from 1994 until 1997, when he deserted and returned to his hometown of Potrero Redondo in the State of Mexico. He traced his fear of the cartels to an incident that occurred near his hometown in February 2003. He was walking down a highway when he was accosted by a group of five masked men, who forced him into a truck. The men, who he believed to be members of a cartel called "La Familia Michoacana," said that they knew he had been in the army and wanted him to train cartel members to use assault weapons. They offered to pay him well, but he refused to work for them, stating that the values he had learned during his military service prevented him from killing innocent people. They then beat him, shot him in the side of his abdomen, left him by the side of the road, and threatened to kill him if he refused them again. The bullet did no serious damage, so he managed to walk back to town (a trip that took nearly twelve hours), where he obtained medical treatment. He fled to the United States a few days later.

Jimenez-Becerril has not returned to Mexico since he left in 2003, but he said he fears that Mexican cartels still would target him for recruitment based on his military service two decades ago. Moreover, although he mostly fears returning to the State of Mexico because of La Familia Michoacana (or an offshoot group called Caballeros Templarios), he doubts there is anywhere in the whole country he "could be at peace" from drug cartels.

The IJ found Jimenez-Becerril's account credible but denied him all immigration relief and ordered him removed to Mexico. First, the IJ determined that Jimenez-Becerril did not qualify for asylum because he did not apply within the one-year statute of limitations and had not shown any changed or exceptional circumstances. As for Jimenez-Becerril's claim for withholding of removal under the INA, the IJ determined that he had not shown that any harm he likely would suffer in Mexico would be on account of a protected ground. Although the IJ recognized that former members of the Mexican military could in some instances constitute a legally cognizable "particular

social group," the IJ concluded that Jimenez-Becerril had not shown that any harm he likely would suffer in Mexico would be *on account of his membership* in that group. The IJ also said that Jimenez-Becerril had not shown that the Mexican government would be unable to protect him or that he would be unable to relocate to another part of the country to avoid harm from the cartels. Finally, with respect to Jimenez-Becerril's claim for withholding of removal under the CAT, the IJ said that his fears of harm were based on "a string of suppositions" and he had not shown that "each step of his hypothetical chain is more likely than not to occur."

Jimenez-Becerril appealed to the Board of Immigration Appeals, challenging the IJ's conclusion that he did not meet the burden of proof for his claims. The Board upheld the IJ's decision in all respects, and Jimenez-Becerril petitions this court for review.

## II. DISCUSSION

Jimenez-Becerril, now represented by recruited counsel, raises numerous challenges regarding the Board's rejection of his withholding claims under the INA and the CAT. When, as here, the Board adopts the IJ's decision and supplements that decision with its own reasoning, we review the IJ's decision as supplemented by the Board. *See Tao Chen v. Lynch*, 810 F.3d 466, 471 (7th Cir. 2016).

Because Jimenez-Becerril was found removable as an alien convicted of a crime involving moral turpitude, we may review only legal arguments that he raises. *See* 8 U.S.C. §§ 1182(a)(2), 1252(a)(2)(C)–(D); *Guzman-Rivadeneira v. Lynch*, 822 F.3d 978, 982 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 644 (2017). Legal arguments may involve, among other things, an assertion that the agency misinterpreted a statute, used the wrong legal standard, or overlooked evidence. *See Lam v. Holder*, 698 F.3d 529, 533–34 (7th Cir. 2012). Most of Jimenez-Becerril's arguments amount to a disagreement with the weight that the Board and the IJ afforded the evidence and thus are not treated as "legal arguments." *See Rosiles-Camarena v. Holder*, 735 F.3d 534, 536 (7th Cir. 2013).

We read Jimenez-Becerril's brief as raising three legal arguments. The first is his contention that the Board and the IJ applied too demanding of a legal standard to his claim for withholding of removal under the INA. Both the Board and the IJ assumed that Jimenez-Becerril could belong to a "particular social group" consisting of "former military," and required him to show that his membership in this group was "one central reason" for the persecution. *See* 8 U.S.C. § 1231(b)(3)(A); *Tsegmed*, 859 F.3d at 484. But

Jimenez-Becerril, relying on *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017), contends that the Board and the IJ should have asked instead whether his membership was merely "a reason" for the persecution.

To the extent that this is more than a semantic distinction, it does not matter in this case. The IJ found, and the Board agreed, that although Jimenez-Becerril's "skills as a former military member brought him to the gang's attention," the harm he experienced and feared is on account of "his refusal to accept the gang's employment," as opposed to his membership in a particular social group. In other words, Jimenez-Becerril's membership was not even "a reason" for his persecution. It is thus unnecessary for us to grapple with Jimenez-Becerril's legal challenge to the "one central reason" test.

Jimenez-Becerril next argues that the Board and the IJ erred by placing on him the burden of proving that it would be unreasonable to expect him to relocate within Mexico to avoid persecution. The government has the burden of proving the feasibility of relocation *if* Jimenez-Becerril established a history of past persecution on account of his membership in a particular social group; otherwise the burden is his. *See* 8 C.F.R. § 1208.16(b)(3)(i). Because Jimenez-Becerril did not show a history of past persecution on account of a protected ground, the premise of his argument is incorrect, and it is unnecessary to consider whether he can avoid persecution by relocating.

Finally, Jimenez-Becerril argues that the Board and the IJ applied too stringent a legal standard to his claim for withholding of removal under the CAT. To qualify for this relief, Jimenez-Becerril needed to show that his removal to Mexico "more likely than not" would lead to torture, either by the government or with its acquiescence. 8 C.F.R. § 1208.16(c)(2); *Tsegmed v. Sessions*, 859 F.3d 480, 485–86 (7th Cir. 2017). Jimenez-Becerril, relying on *Rodriguez-Molinero v. Lynch*, 808 F.3d 1134 (7th Cir. 2015), asserts that the Board and the IJ should have asked instead whether he faces a "substantial risk" of torture. But we used the phrase "substantial risk" in *Rodriguez-Molinero* merely to provide a "non-quantitative proxy for the regulatory language." *See Perez-Montes v. Sessions*, No. 17-2520, 2018 WL 525489, at *1 (7th Cir. Jan 24, 2018). Neither *Rodriguez-Molinero* nor any other decision of this circuit "holds the regulation invalid or creates a standard incompatible with it." *Id.*

### III. CONCLUSION

For the foregoing reasons, we DISMISS Jimenez-Becerril's petition for review in part for lack of jurisdiction and DENY the remainder of the petition.